# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL BERGT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 06 C 4645 |
| ) | |
| MCDOUGAL LITTELL, a division of ) | Judge Joan H. Lefkow |
| Houghton Mifflin Company, and R.R. ) | |
| DONNELLEY & SONS COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Bergt ("Bergt"), has filed suit against defendants, McDougal Littell, a division of Houghton Mifflin Company ("McDougal"), and R.R. Donnelley & Sons Company ("R.R. Donnelley") (together, "defendants") for copyright infringement and fraud. Bergt claims that in response to McDougal's request, he granted McDougal a limited license to reproduce 40,000 copies of his painting, *Primavera* ("the painting"), in a high school literature textbook. Bergt contends that without authorization defendants greatly exceeded the scope of that license, reproducing the painting more than 1 million times. Bergt further alleges that at the time McDougal requested a license to reproduce the painting, it knew that its actual use would exceed 40,000 reproductions. Bergt requests a preliminary and permanent injunction, actual damages, and all profits derived from the unauthorized use of the painting, attorneys' fees, court costs, expert witness fees, interest and all other amounts authorized under law and punitive damages. Presently before the court is defendants' motion to dismiss Bergt's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons sets forth below, the motion to dismiss is denied.

I.  ALLEGATIONS OF THE COMPLAINT

Michael Bergt is a full time professional fine art painter, who in 1995 created a painting titled *Primavera*, which he then duly registered with the U.S. Copyright Office.

On August 6, 1998, McDougal, a publisher of textbooks based in Evanston, Illinois, requested permission from Bergt's agent, DC Moore Gallery ("DC Moore"), to reproduce *Primavera* in the 2000 edition of its 9th grade textbook, *The Language of Literature* ("the textbook"). In its letter to DC Moore, McDougal stated that it could pay $200 for "inside editorial use in [the textbook,] North American rights, for a print run of 40,000...."

Five days later, on August 11, 1998, DC Moore responded. In a document labeled "Invoice," DC Moore stated without limitation that "[r]ights are granted to reproduce the following work of art in the textbook *The Language of Literature* by Applebee, Langer et al." The document indicated that the "Reproduction Fee" was $200 and asked for prompt return of the transparency of the painting that had been enclosed per McDougal's request in its August 6th letter.

Early in 2006, Bergt discovered that McDougal was still using his painting in printings of the textbook and had to date reproduced it in more than 1.2 million copies of the textbook. Believing that he had sold McDougal a limited license to print not more than 40,000 copies of the painting, Bergt filed suit on August 28, 2006, alleging that McDougal had printed in excess of 1 million unauthorized copies of the painting. Additionally, Bergt alleged that McDougal knowingly induced him to license the painting for the modest sum of $200 by requesting permission to reproduce the painting in 40,000 copies of the textbook, even though it knew that its actual use would be much greater.

2

## II. MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## III. DISCUSSION

### A. Copyright Infringement Claim

The crux of the dispute in this case is which of the two letters exchanged between the parties in August of 1998 defines the scope of the license that Bergt granted McDougal. Defendants argue that it is DC Moore's August 11, 1998 correspondence, which they contend granted McDougal a nonexclusive license to reproduce the painting in the textbook without limitation as to the number of reproductions. Bergt, on the other hand, maintains that DC Moore's letter merely accepted McDougal's offer in its August 6, 1998 letter to pay him $200 for no more than 40,000 reproductions of the painting, and thus, that McDougal's letter sets the standard by which defendants' conduct must be measured.

In defendants' view, DC Moore's August 11, 1998 letter is a facially unambiguous contract. As such, defendants' conclude, the court may not go beyond the four corners of that

3

document to interpret it in the context of the parties' earlier correspondence. The hornbook principle that extrinsic evidence may not be considered to interpret unambiguous language is not applicable here, though, because the issue is not one of contract interpretation but instead is one of contract identification. Put another way, the court is not asked to interpret an unambiguous provision, but instead only to identify which of two unambiguous provisions is the actual contract language. Resolution of that issue can only be made by reference to the parties' full course of dealing and turns on the characterization of the letters, particularly DC Moore's.[1]

It is plain that McDougal's August 6, 1998 letter constitutes an offer. "The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 943, 89 Ill.App.3d 498, 44 Ill.Dec. 570 (1980). *See also* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). McDougal's letter clearly and explicitly set forth the material terms according to which it was willing to enter into a binding contract for a license for the use of the painting. The letter specified the item for which a license was sought, the nature and scope of the requested use, and the price McDougal was willing to pay for it. Such use of unambiguous language covering the essential terms of a contract entitled Bergt to believe that the letter empowered him to create by acceptance a legally

---

[1] The parties disagree as to whether New York's or Illinois' rules of contract interpretation should apply in this case. Since, however, neither party identifies a conflict between those states' laws that apply in this case, in fact admitting that there is "little practical significance" in the choice between the two, the court regards the parties' as having stipulated to the application of the substantive law of the state in which this court sits - Illinois. *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of state in which the federal court sits ... Courts do not worry about conflict of law unless the parties disagree on which state's law applies.")

4

enforceable contract.

The proper characterization of DC Moore's August 11, 1998 response - acceptance or counter-offer - is only slightly more elusive. On its face, DC Moore's letter appears to be an acceptance of McDougal's offer. The heading on the letter states "Invoice," which suggests that DC Moore regarded the letter as a book-keeping record of the parties' contract and not as a counter-proposal for one. That interpretation is buttressed by the fact that the letter does not contemplate a reply from McDougal, or any type of acceptance for that matter, as well as the absence of any mention of terms or conditions of submission and use of the painting other than those identified in McDougal's letter. Defendants are correct that no terms or conditions other than those stated in DC Moore's letter are required to create a binding contract, but considered in the light of the parties' course of dealing, the absence of such additional terms and conditions is circumstantial evidence, however slight it may be, that DC Moore did not consider its letter to be a counter-offer. DC Moore's intent is further shown by its satisfaction of McDougal's request that Bergt supply a transparency of the painting and instructions as to how to credit the painting in the textbook. If DC Moore's letter was intended to be a counter-offer, it would have had little reason at that time to facilitate McDougal's use of the painting. There are, of course, other interpretations of DC Moore's conduct. But since the court is obliged on a motion to dismiss to draw all reasonable inferences in favor of Bergt, the fact that DC Moore precisely and promptly performed the two things McDougal requested attendant to the acceptance of its offer is evidence that DC Moore did just that.

The only evidence arguably suggesting otherwise is the omission in DC Moore's statement of the rights granted to McDougal of the four limitations on the use of the painting

proposed by McDougal in its letter. Whereas McDougal proposed limiting its use to (1) inside editorial purposes (2) in not more than 40,000 copies (3) of the 2000 edition of the textbook (4) that was to be distributed in North America, DC Moore's letter stated without limitation that McDougal had been granted the right to reproduce the painting. Defendants contend that since this language is not a mirror image of the license it proposed, DC Moore's letter must be regarded as a counter-offer. But adopting defendants' mechanical application of the so-called mirror image rule would elevate legal formalities over common sense. Under the facts before the court, defendants could not have reasonably believed that DC Moore's letter constituted a counter-offer, because the alleged substitute bargain would have grossly disadvantaged Bergt. Instead of granting McDougal a license for $200 to reproduce the painting for inside editorial purposes in no more than 40,000 copies of the 2000 edition of the textbook, DC Moore's letter, if construed as a counter-offer, would have granted McDougal for that same $200 a license to reproduce the painting for any purpose and in any edition of the textbook without limitation to the size of the print run. It is unreasonable in the extreme to conclude that anyone, much less a professional gallery that is in the business of representing artists, would act so contrary to their own interests. Thus, since there is nothing in the letter that manifests an intention other than to accept McDougal's offer as stated in its letter, DC Moore's letter can only be fairly interpreted at this stage of the proceedings as an unequivocal acceptance.

Taken together, then, the letters of August 6, 1998 and August 11, 1998 constitute an offer and acceptance. The fact that DC Moore abbreviated the terms of the use language in its acceptance letter is immaterial. Accordingly, defendants' motion to dismiss Bergt's copyright infringement claim is denied.

### B. Fraud Claim

Defendants first argue that Bergt has not stated a claim for common law fraud because the amended complaint fails to allege either a false statement of material fact or justifiable reliance on that false statement.

Under Illinois law, to establish fraud a plaintiff must show the following elements: "(1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Heffernan v. Bd. of Trustees of Illinois Cmty. Coll. Dist. 508*, 310 F.3d 522, 525 (7th Cir. 2002).

In this case, the amended complaint specifically alleges that McDougal falsely represented that it sought to use the painting in the textbook for a print run of 40,000, when in fact it knew at the time that it made that representation that its actual use would greatly exceed that number. The amended complaint further alleges that as a result of that false representation, Bergt was induced to grant McDougal a limited license for $200. Together, these allegations are sufficient to state a claim for fraud as they allege both a misrepresentation of material fact and justifiable reliance.

Defendants' argument to the contrary is based on the already rejected proposition that the terms of the license granted by Bergt are defined by DC Moore's August 11, 1998 letter. Specifically, defendants argue that Bergt did not rely on McDougal's representation that it sought to use the painting in the textbook for a print run of 40,000, because DC Moore did not include that limitation in the statement of rights in its August 11, 1998 letter. Having already found that DC Moore's August 11, 1998 letter constitutes an acceptance of McDougal's offer as stated in its

7

August 6, 1998 letter, there is no basis to conclude from DC Moore's omission of the print run term from its partial recitation of McDougal's offer that Bergt's acceptance was not in reliance on McDougal's representation that its use would not exceed 40,000 reproductions.

Defendants also contend that Bergt's fraud claim is time-barred. "The statute of limitations is an affirmative defense, so this argument can prevail at this stage of proceedings only if the defense is conclusively established based on the allegations in the complaint, concessions of the plaintiff, or any other material appropriate for consideration on a motion to dismiss." *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956-57 (N.D.Ill. 2002).

Under Illinois law, the statute of limitations for common law fraud is five years. 735 ILCS 5/13-205. The statute begins to run when the fraud was discovered or, in the alternative, when it could have been reasonably discovered. *See Kolody v. Simon Marketing, Inc.*, 1998 WL 578527, at *15 (N.D.Ill. Sept. 3, 1998) (applying Illinois law). If a party could have reasonably discovered the possible existence of an injury, then "the burden is upon the injured person to make diligent inquiry concerning the existence of a cause of action and the limitations period commences." *Id.*

Here, Bergt's fraud claim is based on McDougal's alleged false representation regarding the scope of its intended use of the painting. While Bergt did not file his initial complaint until August 28, 2006 - over eight years after the alleged misrepresentation - Bergt alleges that he did not discover until early 2006 that McDougal's actual use of the painting had exceeded the scope of the license. That allegation is sufficient to raise an issue of fact as to whether Bergt exercised reasonable diligence in discovering McDougal's alleged fraud. If proven, the start of the statute of limitations would not have begun until Bergt actually discovered the fraud, or in other words,

until a few months before he filed his original complaint. Accordingly, dismissal in this case for untimeliness is inappropriate.

## ORDER

For the reasons stated above, defendants' motion to dismiss Bergt's amended complaint [# 13] is denied. The case will be called for status on January 16, 2007 at 9:30 a.m.

Dated: December 21, 2006          Enter: _____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge